**In re Al D. FARRINGTON, Debtor.**

**Al D. FARRINGTON, Plaintiff,**

**v.**

**Margaret A. LINCOLN, f/k/a Margaret A. Farrington, Defendant.**

**Bankruptcy No. 90–0092–8P7.**
**Adv. No. 90–147.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 13, 1990.

872

Larry H. Evans, Tallahassee, Fla., for plaintiff.

Douglas A. Wallace, Bradenton, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case and the matter under consideration is the dis-chargeability vel non of an obligation owed by Al D. Farrington (Debtor) to Mrs. Margaret A. Lincoln (Ms. Lincoln), the Defendant named in the above-captioned adversary proceeding. The obligation under consideration and in dispute is set forth in a Marital Settlement Agreement (Exh. No. 2) entered on December 21, 1988, requiring in part that the Debtor make certain payments labelled as "alimony" to Ms. Lincoln. The issue relevant to the resolution of this matter is the question whether or not this obligation is really in the nature of alimony as labelled or, in fact, is a property settlement, and thus dischargeable. The underlying facts relevant to this issue are as follows:

The Debtor and Ms. Lincoln were married on April 2, 1982. This was the third marriage for each and there were no children from this marriage. Ms. Lincoln was consistently employed during the marriage, first as a secretary, and later on as an office manager for a doctor's office. The record reveals that Ms. Lincoln earned $16,400 in 1986, $18,011 in 1987 and $18,926 in 1988. The parties have approximately equal educational backgrounds and earning capacity.

During the marriage, the husband was the principal stockholder and officer of a corporation known as Alzac Handcrafted Jewelry, Inc. (Alzac), in which he owned an 83% interest. In addition, the Debtor held a 50% ownership interest in a corporation known as Goldsmith Trade Shop, Inc. The record reveals that prior to the entry of the divorce decree, Alzac sought relief in this Court under Chapter 11 of the Bankruptcy Code albeit without success and the Chapter 11 case was eventually converted to a Chapter 7 liquidation case.

On December 21, 1988, the Circuit Court for Manatee County, Florida, entered a Final Judgment of Dissolution of Marriage (Exh. No. 1) which incorporated the Settlement Agreement. The specific obligation in dispute is described in Paragraph 3 of the divorce decree which provides as follows:

### 3. *Alimony.*

Commencing on May 1, 1989 and continuing on the first day of each month thereafter, the Husband shall pay to the Wife as alimony a sum equal to the then current principal and interest payment owed by the Wife on a mortgage in favor of Southern Florida Banc on real property owned by her and located at 2907 Avenue E, Holmes Beach, Florida 34218, until said mortgage and all principal and interest payments made by the Wife from November 1, 1987 through and including April 1, 1989, are paid in full. The parties acknowledge that the foregoing alimony shall be deductible by the Husband for federal income tax purposes. Should the Wife sell the real property with the result that the mortgage is satisfied or assumed by a third party, the Husband's alimony obligation to the Wife shall continue as if the mortgage remained in existence.

(Exh. No. 2)

The genesis of the underlying obligation in dispute is based on a loan in the amount of $52,300 borrowed by Alzac from a bank, which obligation was secured by a mortgage on the property mentioned in the divorce decree, the duplex located at Holmes Beach, Florida. This property was acquired by Ms. Lincoln prior to her marriage to the Debtor and remained at all times property owned solely by her. The property is rented and currently generates a gross income of $700 per month, sufficient to make the mortgage payment on the property. The property is about to be sold and Ms. Lincoln will be relieved from any further obligation to pay that mortgage.

It is without dispute that during the entire pendency of the divorce proceeding Ms. Lincoln never sought temporary or permanent support or alimony. Based on testimony adduced at the final hearing on this matter, it appears the term "alimony" was used in the divorce decree on the insistence of Ms. Lincoln's counsel in order to assure that in the event the Debtor decided to file for relief under the Bankruptcy Code and seek a discharge, this particular obligation owed to Ms. Lincoln would not be discharged. It is equally true, however, that the term "alimony" was used so that the Debtor would be able to deduct these payments from his taxable income. (Exh. No. 4). The Debtor made some of the payments required by Paragraph 3 of the divorce decree, but ultimately defaulted. It is without dispute that Ms. Lincoln deducted this obligation as a bad business loan on her income tax return filed for the year 1989. (Exh. No. 8).

According to the Debtor, the remaining obligation set forth in Paragraph 3 of the divorce degree is a property settlement, in spite of the label "alimony" and, therefore, is within the protective provisions of the general bankruptcy discharge. Of course, it is Ms. Lincoln's position that the obligation is described as "alimony" and is, in fact, alimony; therefore, the obligation comes within the exception to discharge set forth in § 523(a)(5) of the Bankruptcy Code.

§ 523(a)(5) of the Bankruptcy Code provides as follows:

### § 523. Exceptions to discharge.

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agree, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support ...

It should be noted at the outset that to accomplish the well-recognized purpose of the Bankruptcy Code, to provide the Debtor with a fresh start, there is a presumption in favor of the premise that a debt is dischargeable unless the complaining creditor who bears the burden of proving non-

dischargeability, proves that the obligation under consideration is within the scope of the statutorily established exception to the general bankruptcy discharge set forth in Section 523(a) of the Bankruptcy Code. *Tilley v. Jessee*, 789 F.2d 1074 (4th Cir. 1986).

 The determination of the character of an obligation described as alimony, maintenance or support is based on federal, not state, law for purposes of determining dischargeability. *See In re Harrell*, 754 F.2d 902 (11th Cir.1985); *In re Hall*, 51 B.R. 1002 (Bkrtcy.S.D.Ga.1985); *In the Matter of Basile*, 44 B.R. 221 (Bkrtcy.M.D. Fla.1984). The intent of the parties at the time they entered into the divorce settlement is, of course, important in determining whether an obligation is actually in the nature of alimony, maintenance or support. *In re Sylvester*, 865 F.2d 1164 (10th Cir. 1989). In addition, a court will look to the substance of the agreement or the final decree dissolving the marriage rather than the label the parties elected to use or the court placed on the particular obligation in determining the character of the debt. *See In re Winn*, 95 B.R. 839 (Bkrtcy.S.D.Fla. 1988); *In re White*, 84 B.R. 818, 822 (Bkrtcy.M.D.Fla.1988). Thus, it is clear that in determining whether or not an obligation is intended for support of a spouse within the meaning of § 523(a)(5) of the Bankruptcy Code, this Court must look beyond the language of the divorce decree to the intent of the parties and the substance of the obligation. *In re White, supra*, 84 B.R. at 822.

■ Applying the foregoing principles to the facts developed in this case, there is hardly any doubt that the obligation under consideration is not an obligation to support Ms. Lincoln but is, in fact, nothing more than a provision providing for the repayment of the loan to Alzac.

There is no question in this case that the term "alimony" was used for reasons other than to describe a support obligation to be paid to Ms. Lincoln. Second, after the Holmes Beach property is sold, Ms. Lincoln will not have any further liability or need for payment from the Debtor on this obligation. Third, she is and has been self-sup-porting and fully employed, and is certainly not in need of any support. Thus, this Court is satisfied that the obligation of the Debtor set forth in Paragraph 3 of the final decree is, in fact, a property settlement and not alimony, maintenance or support. Therefore, this is a dischargeable obligation.

A separate final judgment will be entered in accordance with the foregoing.