In re Francis Kenyon FEREBEE, Jr., Debtor.

**Kendall B. FEREBEE, Plaintiff,**

v.

**Francis Kenyon FEREBEE, Jr., Defendant.**

**Bankruptcy No. 90–22926–T.**
**Adv. No. 90–2201–T.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

March 28, 1991.

Tom C. Smith, Virginia Beach, Va., for plaintiff.

Patricia A. Helfer, Virginia Beach, Va., for debtor/defendant.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This adversary proceeding brought by Kendall B. Ferebee against Francis Kenyon Ferebee, the debtor, involves a determination of dischargeability pursuant to 11 U.S.C. § 523(a)(5). The parties agreed to waive oral argument and evidentiary hearing and submitted the adversary proceeding to the court on a stipulation of the facts and memoranda of law. For the reasons stated below, this court grants judgment in favor of the plaintiff.

### Facts

Mrs. Ferebee is the former spouse of the debtor. The two were divorced by a final decree entered in the Circuit Court for the City of Virginia Beach, Virginia, on September 6, 1989. The final decree affirmed, ratified, and incorporated a Separation

Agreement, and an Amendatory and Supplemental Agreement entered into by the parties. The effect of certain terms of the post-nuptial agreements are the subject of today's dispute.

This voluntary chapter 7 case was filed on June 18, 1990. Mrs. Ferebee filed this adversary proceeding on July 20, 1990, seeking a determination that certain obligations in the agreements are nondischargeable. Stated generally, the issue is whether the debtor's agreement to hold Mrs. Ferebee harmless on specified joint debts is actually in the nature of alimony, support, or maintenance.

The separation agreement, dated November 10, 1988, allocated various property and joint debts among the parties. Section 2 of the agreement provided for a waiver of spousal support by both parties. Section 5 of the separation agreement provided that the debtor would pay 70 percent of a note to Sovran Bank representing funds borrowed for income taxes, and provided that he would pay an existing Sovran VISA bill and a furniture loan from Signet Bank.[1] Section 5 also provided that the parties would hold each other harmless on the debts each assumed. Despite the language of section 2 waiving spousal support, the second paragraph of section 5 provided that the agreement to hold harmless was an agreement in the nature of alimony, maintenance, or support and would not be dischargeable in bankruptcy.

In section 4 of the agreement the parties agreed that a leased 1988 Saab automobile would be retained by Mrs. Ferebee as her sole separate property. However, the agreement was later amended by the supplemental agreement which declared the Saab to be the sole separate property of the husband and provided that he would hold her harmless "against all loss on account thereof."[2]

The stipulation of facts indicates that there are three debts in question on which the debtor has defaulted in his payments: a VISA charge card debt, a Signet Bank loan, and a lease of a 1988 Saab automobile. Nowhere in the pleadings, memoranda, or stipulation is it indicated what amounts are currently owing on the obligations. The court is therefore unable to render judgment in a specific amount and is limited to making a declaratory ruling.

### Discussion and Conclusions

Under § 523(a)(5) of the bankruptcy code, debts for alimony, maintenance, or support are not dischargeable in a chapter 7 bankruptcy to the extent that they are "actually in the nature of alimony, support, or maintenance."[3] An agreement to hold a

---

1. The full text of section 5 is:

   5. Neither party, after the date hereof shall pledge the credit of the other, and each party shall pay his or her own separate debts incurred hereafter. Each party shall pay his or her own now-existing and hereafter incurred medical bills and shall hold the other party harmless from all loss on account thereof. The note at Sovran Bank representing funds borrowed to pay income taxes shall be paid by the parties as the same matures with Husband to pay 70% thereof and Wife to pay 30% thereof. Husband shall pay the existing Sovran Visa and the Signet Bank furniture loan. Wife shall pay the North Carolina National Bank Visa. Each party shall indemnify and hold harmless the other from all loss on account of the obligations or the percentage thereof assumed herein.

   The agreement by a party herein to hold the other harmless on debts is an agreement in payment of alimony, maintenance and spousal support, and shall not be dischargeable in bankruptcy as it is not a division of property

   or a property settlement. Such duty arising hereunder is the enforcement of a marital duty in accord with public policy.

2. The pertinent text of the supplemental agreement is:

   [T]he 1988 Saab automobile mentioned in [section 4 of the agreement] shall be the sole separate property of Husband, and the lease to and possession thereof has been transferred to Husband (as opposed to Wife as originally stipulated) and that Husband assumes all lease payments, expenses and liens thereon and agrees to indemnify and hold harmless Wife from and against all loss on account thereof and so as to reflect that Wife has purchased her own automobile and pays all expenses thereof without any contribution from Husband....

3. Section 523(a)(5) provides in pertinent part:

   A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... to a spouse, former spouse, or child of the debtor, for alimony to, mainte-

spouse harmless on specific debts may qualify as nondischargeable under this section. *Williams v. Williams (In re Williams)*, 703 F.2d 1055 (8th Cir.1983).

■ It is not necessary that the obligations satisfy technical state law requirements to qualify as actually in the nature of alimony, maintenance, or support. *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 762 (3rd Cir.1990); *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir.1986); *Melichar v. Ost (In re Melichar)*, 661 F.2d 300, 303 (4th Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982). Federal bankruptcy law controls. *Gianakas v. Gianakas*, 917 F.2d at 762. State law is, nevertheless, relevant to determining the character of the obligations. *See Long v. West (In re West)*, 794 F.2d 928, 930 (4th Cir.1986); *Macys v. Macys (In re Macys)*, 115 B.R. 883, 890 (Bankr.E.D.Va.1990).

■ The burden of proof is on Mrs. Ferebee to prove by a preponderance of the evidence that the obligations are nondischargeable. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Macys v. Macys*, 115 B.R. 883. Bankruptcy courts may consider a host of factors in determining whether an obligation is actually in the nature of alimony, support, or maintenance. *See, e.g., Coffman v. Coffman (In re Coffman)*, 52 B.R. 667, 674–75 (Bankr.D.Md.1985) (setting forth 18 factors); *Benz v. Nelson (In re Nelson)*, 16 B.R. 658, 660–61 (Bankr.M.D.Tenn.1981), *aff'd in part, rev'd in part*, 20 B.R. 1008 (M.D.Tenn.1982) (setting forth eleven factors).

■ It is not necessary, however, for the bankruptcy court to hear and assess the evidence on every factor. *Bangert v. McCauley (In re McCauley)*, 105 B.R. 315, 319 (E.D.Va.1989). The United States Court of Appeals for the Fourth Circuit has established that the intent of the parties is the primary consideration:

> The proper test of whether the payments are alimony lies in proof of whether it was the *intention of the parties* that the payments be for support rather than as a property settlement.

*Melichar v. Ost*, 661 F.2d at 303 (citations omitted) (emphasis added). *See also Gianakas v. Gianakas*, 917 F.2d 759; *Long v. West*, 794 F.2d 928; *Tilley v. Jessee*, 789 F.2d 1074 (4th Cir.1986).

■ In this case, the court has before it the pleadings, the stipulation, and copies of the agreements and the divorce decree. The plaintiff relies on the characterization put on the obligation in the second paragraph of section 5. The plaintiff argues that this, combined with the waiver of any other right to spousal support, establishes that the parties intended that the debtor's obligation to hold the plaintiff harmless on certain debts was a spousal support obligation. The debtor, however, contends that the language in section 2 of the agreement waiving the right to spousal support establishes that the parties did not intend the obligations to be alimony, maintenance, or support.

The debtor also argues that the court must consider other factors, such as the relative earning power of the spouses and the placement of the hold harmless provision in a section allocating property between the parties. Indeed, the debt on the Saab lease is clearly associated with a property allocation. In addition, the debtor characterizes the second paragraph of section 5 as "an attempt to contract away the debtor's bankruptcy rights."

■ It is clear that the parties intended the hold harmless obligations to be nondischargeable. The agreement accordingly characterized the obligations as alimony, maintenance, and support. The court is mindful of the language of the Fourth Cir-

---

nance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but

not to the extent that ... such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5) (1990).

cuit to the effect that labels assigned by the parties do not end the analysis. *Tilley v. Jessee,* 789 F.2d at 1077. Although the characterizations used by the parties in a post-nuptial agreement are highly probative of the parties' mutual intent, they are not necessarily dispositive of the issue of the character of the obligations. *Gianakas v. Gianakas,* 917 F.2d at 762; *Williams v. Williams (In re Williams),* 703 F.2d 1055, 1057 (8th Cir.1983); *Stranathan v. Stowell,* 15 B.R. 223, 226 (D.Neb. 1981); *Farrington v. Lincoln (In re Farrington),* 118 B.R. 871, 874 (Bankr. M.D.Fla.1990).

Nevertheless, the characterization used by the parties in this case, when viewed in conjunction with the waiver clause, establishes that the right to alimony, maintenance, or support, was bargained away in favor of the hold harmless obligation. The court assigns little weight to the factors urged by the debtor since the parties have made apparent their intent.

This court sees no good reason why parties should not be able to freely structure their post-nuptial agreements according to their needs, so long as their mutual intent remains clear. The court appreciates that practitioners may wish to structure hybrid settlements where obligations that alone might look like property settlements are agreed to in lieu of alimony, maintenance, or support. Without a well planned and structured post-nuptial agreement, the bankruptcy court may be put in the unenviable position of becoming a domestic relations arbiter, weighing multiple issues of fact.

I find that the hold harmless obligations in the post-nuptial agreements are actually in the nature of alimony, maintenance, and support. Consequently, I will enter a separate order declaring the debtor's obligation to hold the plaintiff harmless on the VISA charge card debt, the Signet Bank loan, and the Saab lease nondischargeable.