**In re Marvin D. SPEAKS, Debtor.**

**Carolyn KING, Plaintiff,**

**v.**

**Marvin D. SPEAKS, Defendant.**

**Bankruptcy No. 94–14835–AB.
Adversary No. 95–1087.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Sept. 25, 1995.

Vicki S. Foster, Washington, DC, for plaintiff.

Arthur Lander, Arlington, Virginia, for debtor/defendant.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on the debtor-defendant's motion for summary judgment filed August 15, 1995. Argument was heard on August 29, 1995, at which time the court took the matter under advisement. Because the debtor has not established that he is entitled to judgment as a matter of law, the motion for summary judgment will be denied.

This is an action by the debtor's former wife to determine the dischargeability, under §§ 523(a)(5) and (a)(15) of the Bankruptcy Code, of credit card charges made by the debtor to joint credit card accounts after the parties separated and were divorced.[1] Although titled "Motion for Summary Judgment," the grounds urged by the debtor focus almost entirely on the alleged failure of the complaint to state a claim upon which relief can be granted. The principal contentions in this respect are that the complaint fails to allege that the debtor has the ability to pay the claims, that it fails to allege facts showing a duty to indemnify, and that it fails to allege facts showing that any duty to indemnify was in the nature of alimony, maintenance or support.[2]

### Facts

■ The defendant submitted no affidavits or exhibits in support of his motion, although he did cite to a statement made by the defendant in open court at the hearing on the motion to dismiss the original complaint. The plaintiff has filed a response with affidavits of herself and her attorney and copies of her divorce decree, the property settlement agreement, and two court orders entered by the divorce court relative to the credit card charges. The plaintiff also argued that discovery had only recently been reopened with the issuance of a new scheduling order and asserted that summary judgment was premature until there had been a sufficient opportunity to conduct discovery, particularly as it related to the issue of intent.[3]

1. The plaintiff, proceeding *pro se*, filed a timely but inartful complaint on March 21, 1995. The debtor promptly moved to dismiss, and on May 9, 1995, this court ruled from the bench that the complaint would be dismissed with leave to amend within 30 days. The plaintiff obtained counsel and filed a timely amended complaint on June 6, 1995. It is to this complaint that the motion for summary judgment is directed.

2. The motion also requested that the complaint be dismissed "because no Discovery was undertaken by the Plaintiff * * * and Plaintiff has not met the scheduling order deadline." The court subsequently entered an amended scheduling order which had the effect of extending the various discovery-related deadlines. Accordingly, this issue is moot.

3. Under Fed.R.Civ.P. 56(f), a court may deny a motion for summary judgment or order a contin-

At the heart of the debtor's argument is a property settlement agreement of January 7, 1988. Among other provisions, it requires the debtor to pay Ms. King $350.00 every two weeks as spousal support and to maintain medical health insurance coverage. Relevant to the present dispute, the agreement further recites:

> 12. All mutual debts and obligations have been either paid or resolved by allotment to each of the parties, and no other obligations or debts remain outstanding.

The agreement does not contain any language addressing future incurrence of debt on which the other party might be liable, such a jointly-issued credit cards. The complaint and the plaintiff's supporting affidavit assert, however, that the debtor and his then-wife had orally agreed that they would not incur further charges on any of the jointly held credit card accounts. The agreement did contain the following additional provisions, which the debtor strongly urges control this case:

> 16. No modification or waiver of any of the terms of this Agreement shall be valid unless in writing and executed with the same formality of this Agreement. * * *
>
> * * * * * * 
>
> 18. The parties have incorporated in this Agreement their entire understanding. No oral statements or prior written matter extrinsic to this Agreement shall have any force or effect.

The agreement was ratified and affirmed in a final decree of divorce entered by the Circuit Court of Prince William County, Virginia on September 12, 1988.[4]

It appears undisputed that at or shortly after the time the agreement was signed, the joint credit card debts were in fact paid off. However, the cards were not cancelled, and the plaintiff took no action on her own to close the accounts or to have her name removed. The debtor at some point resumed making charges to the accounts. When the plaintiff learned that the charges had been incurred and were adversely affecting her credit report, she returned to the Circuit Court of Prince William County on a motion for a rule to show cause. The debtor did not attend the hearing that was held on May 6, 1994. The order entered by the court as a result of that hearing found that the debtor "has used credit cards which obligate the complainant to repay sums incurred by the defendant since the date of the final decree of divorce;" and that the debtor's use of the credits cards and his failure to make the required payments "have appeared on the complainant's credit report, thereby causing hardship to her in that credit has been denied because of the Husband's separate debt and his failure to pay his separate debt." The order adjudged the debtor to be in contempt and, among other relief, ordered "that the Defendant shall assume responsibility for all debt to the following creditors: NationsBank[,] Bank of New York[, and] Independent Bank of Manassas and remove the complainant's name from all liability thereon." The order further required the debtor to "contact the Credit Bureau of Northern Virginia, Inc., by certified letter, return receipt requested, and notify that agency that the above-referenced debts are his separate debts and not the debt of the Complainant."

When the debtor failed to comply with the order of May 6, 1994, the court issued a capias, and the debtor was incarcerated. A

---

uance "to permit affidavits to be obtained or depositions taken or discovery to be had" if the opposing party shows by affidavit that the party "cannot for reasons stated present by affidavit facts essential to justify the party's opposition." In this case, the motion for summary judgment is primarily an attack on the sufficiency of the complaint. The issues raised are for the most part matters of law, and their resolution does not require resort to affidavits. Moreover, the debtor has presented *no* affidavits in support of the motion for summary judgment. Since the plaintiff, as the party opposing summary judgment, has submitted affidavits sufficiently demonstrating the existence of triable issues of fact, a continuance of the summary judgment motion until the close of discovery is unnecessary.

4. Decree of Divorce A Vinculo Matrimonii, *Speaks v. Speaks,* Chancery No. 25429 (September 12, 1988), p. 3 ("ADJUDGED, ORDERED, and DECREED that the Court doth ratify, confirm, approve and incorporate by reference thereto the Agreement between the parties dated January 7, 1988.") The decree also restored the complainant to her maiden name of Carolyn Ann King.

**440**

hearing was held on September 16, 1994, which resulted in the entry of an Agreed Order, dated October 17, 1994, which among other provisions ordered the debtor to

> transfer all balances on credit accounts with the Bank of New York, NationsBank and the Independent Bank of Manassas to separate credit accounts in his own name, removing the name of the complainant completely from said accounts.

The debtor did not do so, and on December 20, 1994, when he filed his chapter 7 petition in this court, he owed $10,196.66 on the three joint accounts. The creditors are now pursuing the plaintiff for payment of these sums.

### Discussion

■■■ Under Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Fed. R.Bankr.P. 7056, a party is entitled to summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The burden of establishing the nonexistence of a genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1985). In considering a motion for summary judgment, the court should draw all inferences from the underlying facts in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where, as here, a defendant's motion for summary judgment attacks, not the sufficiency of the plaintiff's evidence but the sufficiency of the complaint, the applicable standard is the same as for a motion to dismiss under Fed.R.Civ.P. 12(b)(6). That is, the well-pleaded allegations in the complaint must be taken as true and must be construed in the light most favorable to the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Ultimately, the complaint should not be dismissed unless the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Id.*

As noted above, the defendant has attacked the complaint in three respects, each of which will be discussed in turn.

### A. The failure to allege ability to pay

■■■ The debtor asserts that, as regards the pleaded cause of action under § 523(a)(15) of the Bankruptcy Code, the complaint is deficient because it does not allege that the debtor has the ability to pay the obligation sought to be excepted from discharge and that the discharge of the debt will not result in a benefit that outweighs the detrimental consequences to the debtor. The statutory provision in question excepts from discharge a debt

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a government unit *unless*—
>
> (A) *the debtor does not have the ability to pay such debt* from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) *discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse,* or child of the debtor.

(emphasis added). The complaint, while alleging that the debtor had an obligation under the property settlement agreement, divorce decree, and subsequent court orders to indemnify his former wife against the charges he incurred after the divorce on the joint credit cards, does not affirmatively allege that the debtor has the ability to pay those debts, or that discharge would not benefit him more than it harms the plaintiff.

The court concludes, however, that inability to pay or balance of harm in favor of the debtor are affirmative defenses to be raised and proved by the debtor. They are not elements which must be negated by the plaintiff in her complaint. *See, In re Comisky,* 183 B.R. 883 (Bankr.N.D.Cal.1995) (burden on debtor to prove hardship, by analogy to § 523(a)(8)).

### B. The failure to allege facts showing a duty to indemnify

 The debtor next asserts that the complaint fails to allege facts showing a duty to indemnify. As noted above, there is no specific language in the property settlement agreement in which the parties undertake not to incur future debt on the joint credit cards or to hold each other harmless for any breach of that undertaking. An agreement or understanding not to incur further charges may, however, be fairly implied from the context. The parties represented to each other that "[a]ll mutual debts and obligations *have either been paid or resolved by allotment* to each of the parties, and no other obligations or debts remain outstanding." The clear implication of the provision is that each of the parties would henceforth be solely responsible for their own debts. This is consistent with plaintiff's assertion, in her complaint and supporting affidavit, that she and the debtor orally agreed, at or around the time the agreement was executed, that no further debts would be incurred on the joint credit cards after they were paid off.

Although the debtor vigorously contends that paragraph 18, the agreement's integration clause, bars the plaintiff from relying on the oral agreement,[5] the alleged oral agreement does not in any sense alter, amend or vary the written property settlement agreement but simply makes explicit what is otherwise clearly implied—namely, that once the parties were separated and had paid off the existing joint debt, neither would pledge the credit of the other. Indeed, even in the absence of an explicit agreement, the law will imply an obligation to indemnify where one party incurs a debt for his own benefit which creates liability on the part of another. *See, Dickenson v. Charles,* 173 Va. 393, 400, 4 S.E.2d 351, 353 (1939) ("A surety who pays the debts of his principal, upon the plainest principles of natural reason and justice, has a right to be reimbursed by him. And this principle is recognized by both courts of law and equity.") In this case, the court order of May 6, 1994, judicially recognized and imposed on the debtor a duty of indemnity. Although the State Circuit Court order of May 6, 1994, was entered by default after the debtor failed to appear in response to the rule to show cause and therefore is not entitled to collateral estoppel effect, *M & M Transmissions, Inc., v. Raynor (In re Raynor),* 922 F.2d 1146, 1148–49 (4th Cir.1991), the subsequent Agreed Order of October 17, 1994, effectively ratified the earlier order and, being the result of a hearing participated in by the debtor, binds him in this litigation. Accordingly, the plaintiff has made a sufficient showing of duty to indemnify.

### C. The failure to allege that the state court intended to create a support obligation

 The debtor argues finally that the complaint fails to state a cause of action under § 523(a)(5) of the Bankruptcy Code because it does not affirmatively plead that "the trier of fact"—presumably the state Cir-

---

**5.** At oral argument, the debtor's counsel expanded upon this argument by also asserting that evidence of an oral agreement to indemnify is barred by the Virginia Statute of Frauds, § 11–2 Va.Code Ann., which, among other provisions, requires a writing "signed by the party to be charged or his agent" in order to maintain an action

> 4. To charge any person upon a promise to answer for the debt, default, or misdoings of another.

The plaintiff here, however, is seeking to hold the debtor liable for his own debt, not the debt of another. See, *Skinker v. Armstrong,* 86 Va. 1011, 11 S.E. 977 (1890) (statute contemplates a gratuitous verbal promise by one to pay a debt which he does not owe, and is not liable for, but which is owed by another). Furthermore, it has been held in Virginia that a verbal promise of indemnity against damages resulting from one's own act is not within the statute of frauds and is valid and binding. *Chapman v. Ross,* 39 Va. (12 Leigh) 565 (1841). See, *Alphin v. Lowman,* 115 Va. 441, 79 S.E. 1029 (1913) (promise by a surety that he will indemnify a cosurety is an original undertaking and not within the statute of frauds).

cuit Court judge who ordered the debtor to pay the three debts in question—"intended" the obligation to be "in the nature of alimony, maintenance or support." Under § 523(a)(5) of the Bankruptcy Code, a discharge under chapter 7 does not discharge an individual debtor from a debt

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
> \* \* \* \* \* \*
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

It is well-settled that an agreement to hold a spouse harmless on specific debts may qualify as nondischargeable under this section. *Ferebee v. Ferebee* (*In re Ferebee*), 129 B.R. 71, 73–74 (Bankr.E.D.Va.1991) (Tice, J.) (agreement to pay credit card, furniture loan, and car lease held to be in the nature of support and therefore nondischargeable). Whether in a specific case an obligation to hold harmless or indemnify is actually in the nature of support requires consideration of "a host of factors." *Id.* at 74. *See, In re Welborn,* 126 B.R. 948 (Bankr.E.D.Va.1991) (Bostetter, C.J.). The inquiry is particularly fact-intensive and poorly suited for summary judgment.

Here, the complaint squarely alleges that the obligation is one for support, that it is owed to a former spouse, and that it was incurred in connection with a separation agreement, divorce decree or other order of a court of record. The complaint therefore sets forth the essential elements of the § 523(a)(5) exception to discharge. It is not necessary that the complaint additionally plead the existence of each and every factor which may bear on the issue of whether the indemnity obligation is "actually" in the nature of support.

Additionally, looking beyond the complaint, a review of the affidavits, property settlement agreement, and court orders submitted by the plaintiff establish the existence of triable issues of fact. First, it may be fairly inferred that the purpose of an agreement, whether express or implied, that no further charges would be made to joint credit card accounts after the parties had separated and paid the balances down to zero was to protect each spouse against the economic hardship that would result from having to pay new debts incurred by the other. Indeed, the plaintiff asserts in her supporting affidavit that this was its precise purpose.[6] It may likewise be fairly inferred that the state Circuit Court judge, in ordering the debtor to pay the charges he ran up on the three joint credit card accounts after the divorce, did so because of the adverse effect it would have on the plaintiff's standard of living if she were required to pay the debts incurred by her former husband after the divorce. Of course, the debtor may be able to show at trial that neither inference is true, but at this point the plaintiff has put forward sufficient evidence in support of her claim to survive a summary judgment motion.[7]

### Conclusion

For the foregoing reasons, the court concludes (1) that the complaint sufficiently

---

**6.** "Mr. Speaks' agreement to pay the joint obligations that existed at the time of the divorce, and his agreement not to incur any additional charges on the cards in the future, was intended by both Mr. Speaks and myself to provide me further financial support *by eliminating a possible financial liability and by ensuring that I would be able to obtain future credit if I needed it.*" King Aff., ¶ 7. (emphasis added).

**7.** Debtor's counsel has referred the court to the transcript of the hearing held before Chief Judge Martin V.B. Bostetter, Jr., of this court on May 9, 1995, on the motion to dismiss the original complaint. At that hearing, the plaintiff, who at that time did not have an attorney, told the court "I realize it was my stupidity in not writing the credit card companies and telling them to close the accounts." 5/9/95 Tr. 4. Although debtor's counsel vigorously argued that this admission was fatal to the plaintiff's case, the plaintiff's care, or lack of care, in protecting herself against the situation in which she now finds herself is simply not an element of either the § 523(a)(5) or § 523(a)(15) exception to discharge.

pleads causes of action to except from discharge under §§ 523(a)(5) and (a)(15) the debtor's liability to indemnify his former wife with respect to the debts he incurred on the joint credit cards after the parties were divorced and the cards supposedly paid off, and (2) that the debtor has not carried his burden of showing that he is entitled to judgment as a matter of law. Accordingly, a separate order will be entered denying the motion for summary judgment.