In re Patricia Ann SCHMITT.

George SCHMITT, Plaintiff,

v.

Patricia Ann Schmitt EUBANKS, Defendant.

Bankruptcy No. 95–16104 S.
Adv. No. 95–6516.

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

May 28, 1996.

---

William Randal Wright, Hope, AR, for Plaintiff.

Eugene Hale, Prescott, AR, for Defendant.

Fredrick Wetzel, Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the trial in this adversary proceeding to determine the dischargeability of debts pursuant to 11 U.S.C. § 523(a)(15).

George and Patricia married in 1983 and divorced in 1991. During their marriage they accrued a large amount of credit card debt which they apportioned between them at the conclusion of their marriage. The provisions of the documents relevant to this proceeding, the divorce complaint, signed by both parties in October 1991, and the decree, filed in December 1991, provide:

> Each party will pay any debt incurred by said party subsequent to separation on July 8, 1991.

> \* \* \* \* \* \*

> Plaintiff [debtor Patricia Schmitt] shall pay the following debts: Sears, Montgomery Ward, American Express, American Express Optima, Visa, Master Charge, Total Charge, and General Motors Acceptance Corporation debt secured by plaintiff's automobile.

There was no "hold harmless" provision in any documents signed by the parties or the Chancery court. From July 1991 through approximately March 1995, Patricia Schmitt made monthly payments on the credit cards and continued to use them. Although he did not use the cards, George Schmitt did not take any action to have the cards canceled or have his name removed from them. Thus, charges continued to accrue on the cards for which he remains liable.

On March 6, 1995, Patricia filed for bankruptcy, but did not, initially, list George as a co-debtor. Apparently unaware of the bankruptcy, and upon contact by the credit card companies for payment upon Patricia's default, George obtained a citation for contempt in the Chancery court against Patricia for her failure to pay the debts pursuant to the divorce decree. The contempt order was issued on May 15, 1995, during the bankruptcy case, based upon stipulated facts. Both Patricia and her attorney signed the order. The Chancery Court order found the debtor in contempt and directed her to pay the accounts within ten days or be jailed for contempt. Two days later, on May 17, 1995, the debtor amended her bankruptcy schedules to include George as a co-debtor. George filed this complaint shortly thereafter, alleging that the debt owing to him from Patricia should be nondischargeable pursuant to section 523(a)(15) of the Bankruptcy Code.

In 1994, Congress amended the Bankruptcy Code to add a new nondischargeability provision:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

> (A) the debtor does not have the ability to pay such debt from income or property

of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).[1] Under this provision, the marital debt is presumptively non-dischargeable unless the debtor can demonstrate that she does not have the ability to pay the debt *or* the benefit to her is greater than the detriment to her former spouse. *See generally In re Straub,* 192 B.R. 522 (Bankr.D.N.D.1996) (discussing placement of the burdens of proof upon the debtor and nature of elements to be proven); *In re Gantz,* 192 B.R. 932 (Bankr.N.D.Ill.1996) (burdens of proof).

The first issue[2] for the Court is whether there is a debt owed within the meaning of this statute *i.e.,* whether the debt was incurred in the course of a divorce or other order of a court of record. Prior to the divorce proceeding, both parties were liable on the credit card debt. In connection with the divorce proceedings, the debtor agreed to pay certain credit card debts which are the subject of this adversary proceeding. Although there is no "hold harmless" language in the decree or complaint, the parties, in fact, promised pay their own debts incurred *after* the divorce. Further, despite the absence of the "hold harmless" language, under Arkansas law, the debtor incurred a debt to her husband in connection with the divorce proceeding, albeit after the decree was entered.

Under Arkansas law, the Divorce Decree, containing the language "ordered" creates an obligation on the parties to comply with that Order, enforceable by the civil and criminal contempt and garnishment powers of that court. *Thomas v. Thomas,* 443 S.W.2d 534, 246 Ark. 1126 (Ark.1969); *see Gatlin v. Gatlin,* 811 S.W.2d 761, 306 Ark. 146 (Ark.1991) (wife, ordered to "make individual payments . . . for their portion," but failed to pay, incarcerated for contempt). In the instant case, the Chancery Court order imposed upon the debtor a duty to pay her apportioned debts, which Order was enforceable by any means within the Chancery power. *See* Ark.Code Annot. § 9–12–313 (Michie 1979). Based upon that order, the debtor incurred a debt in connection with the divorce within the meaning of section 523(a)(15).[3]

Secondly, under Arkansas law, at the time the decree was entered, the debtor had an obligation to indemnify her former spouse. *See generally Merrill Lynch v. First National Bank of Little Rock,* 774 F.2d 909 (8th Cir.1985) (discussion of different types of in-

---

1. Although undoubtedly enacted with good intentions, this statute is misguided. The statute, like section 523(a)(5) recognizes that the transactions between persons formerly married to each other are not normal debtor-creditor transactions and that the Bankruptcy Code address these special issues differently from commercial transactions or other general financial situations. However, a review of the spate of recent decisions since enactment reveals that section 523(a)(15) has created burdens upon the Courts and the parties that were clearly not intended. The statute has been referred to as "sausage," *In re Butler,* 186 B.R. 371, 373–75 (Bankr.D.Vt.1995), transformed into "hash," *In re Dressler,* 194 B.R. 290 (Bankr.D.R.I.1996), and as "paving stone on the road to the region of Hades reserved for litigation nightmares," *In re Smither,* 194 B.R. 102 (Bankr.W.D.Ky.1996).

The problems resulting from the amorphous standards in the statute are exacerbated by the legislative history and comments which are in-

consistent with the statutory language. For example, although paragraph (B) refers to a balancing of the "benefit to the debtor" against the "detriment to the spouse," the comments states that the bankruptcy discharge should be "sacrificed" only if there is a *substantial* detriment to the nondebtor spouse. Moreover, the history seems to indicate that Congress meant primarily to rectify situations in which the parties were nominally referring to support as property settlement. *See* 140 Cong.Rec. H 10,770 (Oct. 4, 1994).

2. The parties apparently agree that this is not a debt within the purview of section 523(a)(5), in the nature of support.

3. In the instant case the Chancery Court found the debtor in contempt for failure to pay her portion of the marital debt and expressly directed her to pay the debt within a time certain. This Order also would create a debt within the meaning of section 523(a)(15).

demnification under Arkansas law). In this case, the debtor had a duty, agreed upon by her in the divorce, as well as a duty imposed by court order, to pay the particular marital debts and the debts she alone incurred in the future on those joint credit cards. Under this doctrine, the debt is required to be paid by her rather than by George because both parties agreed to the division of debt. George paid his portion of the debt, and, it would appear, all of the *joint* debt has been paid over time.[4] The only debt remaining on the credit cards in issue is debt incurred after the separation, debts solely incurred by the debtor and over which the non-debtor had no control. While it was foolish to remain as a co-debtor on the credit cards, such is not wrongful conduct so as to obviate the protection of the doctrine of indemnification. It is clear from the context and the documents that the parties agreed to, and were ordered to, bear their apportioned debts and hold the other harmless from payment. *See King v. Speaks (In re Speaks)*, 193 B.R. 436, 441 (Bankr.E.D.Va.1995) ("Indeed, in the absence of an explicit agreement, the law will imply an obligation to indemnify·where one party incurs a debt for his own benefit which creates liability on the part of another."). Accordingly, the debtor incurred a debt in connection with the divorce within the meaning of section 523(a)(15).

In so ruling the Court follows the analysis found in *Speaks*, 193 B.R. 436, and declines to follow *In re Stegall*, 188 B.R. 597 (Bankr. W.D.Mo.1995), which held, notably with little analysis or reference to state law, that the absence of any "hold harmless" language meant that no debt was created as between the parties, and *In re Owens*, 191 B.R. 669 (Bankr.E.D.Ky.1996), which follows *Stegall*.

■ Upon the non-debtor's proof that the debt was incurred in the course of the divorce or later order, the burden shifts to the debtor to demonstrate either that the debtor does not have the ability to pay the debt or that discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the former

spouse. *See In re Morris*, 193 B.R. 949 (Bankr.S.D.Cal.1996). With regard to these elements, the Court views the parties circumstances as of the time of trial, rather than any earlier date, in order to fully examine the benefits of the "fresh start" to the debtor, any change in circumstances in employment, and other good or bad fortune which may have befallen the parties. In considering changed events, and particularly the benefits of discharge, the current and future financial circumstances of the parties are better analyzed. *See In re Dressler*, 194 B.R. 290 (Bankr.D.R.I.1996); *In re Taylor*, 191 B.R. 760 (Bankr.N.D.Ill.1996).

■ The Court finds that the debtor has the ability to pay the debt and thus does not meet her burden under paragraphs 523(a)(15)(A). This Court believes that the appropriate analysis includes a view of the debtor's future financial situation, including an ability to make minimal monthly payments on the debt, rather than a static view of the debtor's current ability to pay the debt. *Cf. In re Straub*, 192 B.R. 522 (Bankr. D.N.D.1996); *In re Florio*, 187 B.R. 654 (Bankr.W.D.Mo.1995). *But see In re Carroll*, 187 B.R. 197 (Bankr.S.D.Ohio 1995). Of course, under this prong of the statute, the analysis is solely upon the finances of the debtor and her family; the finances of the non-debtor are not relevant until the second prong of the statute is analyzed. *See In re Gantz*, 192 B.R. 932 (Bankr.N.D.Ill.1996).

While it is true that prior to filing bankruptcy, the debtor's financial situation was not good, many of her set-backs are temporary. She is an educated woman with an nursing degree who has earned, in the past, a good salary. She fell behind in paying her bills, in large part, due to medical surgery she was required to undergo. Prior to her surgery, she was able to make the monthly payments on all of her debts. Inasmuch as her medical difficulties are behind her, the Court does not believe that her financial situation will worsen, but rather, should improve. Moreover, much of the debt listed on her schedules has been discharged in this

---

4. Even if debtor made only the minimum monthly payments, those payments over five years would have paid the earlier, marital charges.

bankruptcy, including extremely large amounts of credit card debt not held jointly with Mr. Schmitt. Finally, the Court does not believe that the schedules accurately reflect the debtor's income and expenses. For example, neither the large expenditure of $200 per month for telephone nor the $700 "various accounts" were ever adequately explained.[5] If the "various accounts" include credit card bills, those debts no longer exist and those funds are available to meet expenses, including payment of any debt to Mr. Schmitt. Accordingly, the Court does not find that the debtor has met her burden that she has no ability to pay the debt.

Under the second paragraph of the statute, the debtor must demonstrate that "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor." The terms of this statute require a Court weigh the benefit against the detriment—an odd balancing and an impossibly amorphous standard. Despite this odd language, the courts appear to engage in a balancing of numerous factors regarding the finances, needs, and general merits of each party's position, trying to determine who will suffer more, *see, e.g., In re Smither*, 194 B.R. 102 (Bankr.W.D.Ky. 1996), an issue Congress foolishly placed exclusively before the federal courts rather than state domestic and family courts which are clearly the courts with the expertise to assess need of the former spouses and their families. Those state courts should have concurrent jurisdiction to make determinations under section 523(a)(15), as they have jurisdiction to determine section 523(a)(5) obligations.

The Court finds that, on balance, the debt should be nondischargeable. Were the debt discharged, the benefit to the debtor is that she no longer will have to make payments on the credit card debt, a monthly amount that was never stated to the Court, which, prior to her surgery was within her means. If the debt is not discharged, she retains some of her credit card debt, but owes it solely to George Schmitt rather than to the credit card companies. Since she no longer has numerous credit cards and their attendant debt, and will now live within her means, she has the current and, more importantly, a future, ability to make payment on the debt.

In contrast, the detriment to the non-debtor should the debt not be discharged outweighs the benefit to the debtor. Indeed, even with the debt being held nondischargeable, the detriment to the non-debtor is great for he has already suffered harassment by the credit card companies and likely has suffered a reduction in his credit rating.[6] The Court rejects any notion that the nondebtor should resolve his situation by filing bankruptcy himself. *Cf. In re Huddelston*, 194 B.R. 681 (Bankr.N.D.Ga.1996) (eligibility for bankruptcy a factor in the analysis); *In re Hesson*, 190 B.R. 229 (Bankr.D.Md.1995) (as a partial basis for its decision, court noted that nondebtor could file bankruptcy for relief); *In re Silvers*, 187 B.R. 648 (Bankr. W.D.Mo.1995). Rather, the implication that a non-debtor would need to file bankruptcy because of another's debt militates in his favor because it is a detriment to his financial status and credit rating.

Inasmuch as the debtor's debt to the credit card company is discharged in her bankruptcy, the nondebtor George Schmitt will still be liable to the credit card companies for all of the debt charged over the past five years by his former wife. He has fulfilled all of his obligations under the divorce decree, provides shelter and support for four children, including two from his marriage to the debtor, pays insurance for all children, and supports his current wife who lost her job. He

**5.** The only expenditure apparently not already listed on the schedules was a $100 per month payment on a nondischargeable student loan.

**6.** Under the Congressional scheme, George Schmitt remains liable to the credit card company. The debt is non-dischargeable as to the former spouse only. Thus, the credit card companies can and probably will continue their collection efforts against him because they cannot collect from the debtor pursuant to 11 U.S.C. § 524. The determination in this adversary proceeding will ensure that the debtor will remain subject to the state court's contempt and incarceration for contempt powers should she fail to pay this debt. It goes without saying that the cards should be canceled, but in any event, George's liability must end.

has no savings. Thus, on balance, the detriment to him far outweighs the benefit of the discharge to the debtor who now has an increase in her disposable income.

**ORDERED:** that the debt owed by the debtor Patricia Ann Schmitt to George Schmitt is nondischargeable pursuant to section 523(a)(15).

**IT IS SO ORDERED.**