**In the Matter of Tommy D. FUSSELL, Jr., Debtor.**

**Alice R. Edenfield, Plaintiff,**

v.

**Tommy D. Fussell, Jr., Defendant.**

**Bankruptcy No. 03–20622.**
**Adversary No. 03–2023.**

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

Nov. 20, 2003.

John S. Myers, St. Marys, GA, for debtor.

M. Elaina Massey, Brunswick, GA, trustee.

## MEMORANDUM AND ORDER

LAMAR W. DAVIS, JR., Bankruptcy Judge.

Before the Court is Plaintiff's Complaint to determine the dischargeability of debts. Debtor filed his Chapter 13 case on April 29, 2003, listing Plaintiff, his ex-wife, as a creditor. Plaintiff asserts that obligations Debtor incurred in their divorce decree are non-dischargeable pursuant to 11 U.S.C. § 523(a)(5) or (a)(15). The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 157. Based on the evidence, citations of authority and other applicable authority, I make the following Findings of Fact and Conclusions of Law in accordance with the directives of Bankruptcy Rule 7052.

### FINDINGS OF FACT

Debtor and Plaintiff married in May 1998 and separated in September 2002. They were both previously married and both have children as a result of their prior marriages, but there are no children of this marriage and thus no issue of child support is presented in this proceeding. They were divorced on December 18, 2002 pursuant to a decree which incorporated a separation agreement signed by the parties on November 19, 2002, which contained the two financial obligations which are at issue in this adversary proceeding. The relevant provisions of the separation agreement read as follows:

The parties agree that they own real property located at 550 Marys Drive, Woodbine, Camden County, Georgia. The parties agree that the Husband shall retain permanent use and possession of said marital residence and the Wife shall Quitclaim her interest in the property to the Husband. The Husband shall be responsible for the first mortgage and the second mortgage, insurance and taxes on said residence and shall hold the Wife harmless thereon. The Husband agrees that he will refinance the first and second mortgages on said property as soon as possible following the entry of the Final Judgment and Decree in this case. . . .

The Husband agrees to be solely responsible for the Bank One Visa account of $8,700.00 and the Shell Mastercard of $1,100.00 and shall hold the Wife harmless thereon. The Husband further agrees to obtain new credit cards solely in his name, pay these two accounts in full, and close them out within ninety (90) days of the entry of the Final Judgment and Decree in this case. The Wife agrees to cease using said account and to return these credit cards to the Husband instanter.

Sep. Agreement ¶¶ 3, 6 (Nov. 19, 2002).

Prior to the marriage, Plaintiff owned a tract of land and a mobile home. When the parties married, she sold the mobile home, disposed of all her furnishings, and put the proceeds from the sale into the parties' joint account which they used to pay their expenses. Additionally, soon after the parties were married, Plaintiff received approximately $14,000.00 in severance from her former employer which she placed in their joint account.

Prior to the marriage, Debtor's Camden County home, which was to become the marital home, was subject to a first mort-

gage of approximately $110,000.00 and a second mortgage of approximately $20,000.00. After their marriage they refinanced the second mortgage, and they consolidated several bills with the pay off on the existing second mortgage into a new second mortgage which Debtor and Plaintiff co-signed. They obtained the new mortgage from Atlantic National Bank, where Plaintiff is currently employed. The proceeds of the refinancing and the funds from Plaintiff's severance package were applied as follows: They paid off the then existing balance on the second mortgage of approximately $20,000.00, and they paid off an estimated $7,000.00 of her personal debt and $18,000.00 of his personal debt.

In the separation agreement Debtor retained the right to permanent use and possession of the marital residence and assumed responsibility for payment of the first and second mortgages. The agreement also provided that he would refinance the second mortgage as soon as possible with the obvious intent of removing Plaintiff as a co-obligor. Despite his best efforts to refinance, he was unable to do so, and Plaintiff remains indebted as a co-maker on this obligation. Debtor's obligation under the decree to pay the second mortgage is in issue in this proceeding. The other issue in this proceeding relates to Debtor's assumption of the balance on the Bank One Visa account in the amount of $8,700.00. The balance on the Visa card has increased substantially as a result of his post-divorce, pre-bankruptcy charges totaling approximately $7,200.00.

The fair market value of the Camden County house is insufficient to satisfy the obligations on both the first and second mortgages and in all likelihood will yield no more than the current balance on the first mortgage. In fact, Debtor has attempted to sell the house for $115,000.00 without success. Thus it is likely that the majority if not the entire balance of the second mortgage will remain a deficiency obligation of both Debtor and Plaintiff. At the time of the divorce Debtor intended to remain in the home, but he had a 75 mile daily commute to his job at the Federal Law Enforcement Training Center in Glynn County. After he was unable to refinance the second mortgage due to the loss of Plaintiff's income, he moved to Glynn County to reduce his commute and to make it more feasible to care for his minor daughter after work. As a result he incurred a rental obligation of approximately $850.00 per month, and he provided in his plan that he would surrender the home to his creditors rather than attempt to retain it.

As to the credit cards, Debtor concedes that he made significant charges on the Visa card between the time of the divorce and the filing of the Chapter 13. Of those charges, $850.00 was used to pay Plaintiff's attorney's fees from the divorce, $1000.00 was used to pay Plaintiff's moving expenses as required by the divorce decree, and roughly $900.00 was used to pay the Shell obligation which he assumed as part of Paragraph 6 of the divorce decree. The remainder of the post-divorce, pre-bankruptcy charges include purchases at a local florist, a jewelry store, visits to a tanning salon and extremely high cellular phone bills. Plaintiff did not use the Visa card after the separation. In the separation agreement, Debtor and Plaintiff agreed:

> Neither the Wife nor the Husband may hereinafter incur any debts or obligations upon the credit of the other and the parties agree that each shall be responsible for all bills incurred by him/her and each shall indemnify, defend and hold the other harmless on any such debts or obligations.

Sep. Agreement ¶ 12 (Nov. 19, 2002).

At the time of the divorce Debtor's income exceeded Plaintiff's income by a sig-

nificant amount. In 2001, he earned approximately $43,000.00 in contrast to her $32,000.00. In the following year, he earned approximately $46,000.00, and she earned $35,000.00. Exh. P–11. Debtor's Schedule I indicates that he has a monthly net income of $3,210.87, and his Schedule J lists his ordinary monthly expenses at $2,658.00. In October 2003, this Court increased Debtor's monthly payment into the plan from $553.00 to $623.00. Additionally, Debtor has three dependent, minor children from a previous marriage. His twelve year old daughter lives with him, and his thirteen year old twins live with his ex-wife. Because of the split custody he neither pays nor receives child support. Plaintiff's budget shows that she grosses approximately $3,142.00 per month with a net income of $2,191.00. Her ordinary living expenses total $2,109.00 not including any payment toward the obligations for which she is jointly liable with Debtor but which he assumed in the divorce decree. Exh. P–9.

## CONCLUSIONS OF LAW

### A. The Second Mortgage and the Visa Card Balance at the Time of the Divorce.

#### 1. 11 U.S.C. § 523(a)(5)

■ Generally, all individual debts are dischargeable in a Chapter 13 bankruptcy; however, 11 U.S.C. § 523(a) provides exceptions to dischargeability. 11 U.S.C. § 523(a)(5) provides that a Chapter 13 discharge:

(a) does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

■ In *Smith v. Smith (In re Gene Kyle Smith)*, Adv. Nos. 96–2054 & 96–2085, Ch. 7 Case No. 95–20524 (Bankr. S.D.Ga. Dec. 30, 1997), this Court, relying extensively on *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902 (11th Cir.1985), articulated the following legal framework for a § 523(a)(5) determination:

The burden of proof in establishing the Section 523(a)(5) exception is on the non-debtor spouse. However, although exceptions from discharge are normally construed strictly against the objecting creditor in order to provide the debtor with a "fresh start," policy considerations require a bankruptcy court to construe domestic relations `exceptions more liberally.

Under Section 523(a)(5), the non-debtor spouse must show that the obligation in issue is actually in the nature of support. If this burden is met, the burden of going forward shifts to the debtor to rebut the evidence that the provision is actually in the nature of support under Section 523(a)(5). The ultimate burden remains with the creditor seeking to except the debt from discharge. The relevant time for making the Section (a)(5) analysis is the time of the decree.

. . . . [T]he bankruptcy court must independently assess the character of an obligation arising out of a divorce and determine whether it is in the nature of alimony. Section 523(a)(5) requires that the bankruptcy court determine nothing more than whether the payment obli-

gation is in the nature of "alimony, maintenance, or support." No precise inquiry into the parties' present financial circumstances is required; only a simple inquiry into the nature of the obligation, liquidating known amounts and leaving any issue of future modifications to the applicable state court.

In determining whether a debtor's obligation is in the nature of support, the intent of the parties [or the trier of fact] at the time of the settlement agreement or trial is dispositive. While a label placed upon spousal obligation is not dispositive in determination of dischargeability, it is indicative of the parties' intent.

*Id.* slip op. at 10–12 (internal citations omitted).

■ The most critical factors to be considered in interpreting the parties' intent with respect to the provisions of a divorce settlement include: (1) any disparity in the parties' earning capacities; (2) parties' relative business or employment opportunities; (3) parties' physical condition; (4) parties' educational background; (5) parties' probable future financial needs; (6) benefits that each party would have received if marriage had continued. *Id.* at 12. (citing *Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 279 (5th Cir.1994)).

■ The separation agreement does not specifically provide for alimony payable to the Plaintiff; however, it provides that Debtor will assume the Visa debt of $8,700.00 and the second mortgage on the house. It is well-established that debts payable to third parties may be viewed as maintenance or support obligations. *See Pauley v. Spong, (In re Spong)*, 661 F.2d 6, 10–11 (2nd Cir.1981); *Williams v. Holt (In re Holt)*, 40 B.R. 1009, 1012 (S.D.Ga.1984). Therefore, the protection afforded by debt assumption and hold harmless agreements arising in a

divorce may provide essential maintenance or support so as to fall into § 523(a)(5). *See, e.g., Smith v. Smith (In re Smith)*, 218 B.R. 254, 260 (Bankr.S.D.Ga.1997); *Chapman v. Chapman (In re Chapman)*, 187 B.R. 573, 575 (Bankr.N.D.Ohio 1995); *Ferebee v. Ferebee (In re Ferebee)*, 129 B.R. 71, 73–74 (Bankr.E.D.Va.1991).

■ However, Plaintiff still bears the burden of proof of establishing that the obligation is actually in the nature of support. The separation agreement does not provide for alimony for Plaintiff, and Plaintiff presented no evidence which establishes that when Debtor assumed the second mortgage and credit card debt, the parties intended those sums to qualify as providing alimony and support to her. Therefore, Plaintiff failed to satisfy her burden of proof.

The house belonged to the Debtor prior to the marriage; therefore, the fact that he remained in possession of the house and assumed the second mortgage does not indicate that the parties intended his assumption of the second mortgage as providing support to her. Furthermore, in the separation agreement, Debtor assumed the Visa and Shell credit card debts and Plaintiff assumed the Belks, J.C. Penney and Sears credit card debts. The division of the credit card debts appears to be in the nature of a property settlement. In addition, the short duration of the marriage and the fact that there were no children of this marriage also indicate that the separation agreement was intended as a property settlement. *See Semler v. Semler (In re Semler)*, 147 B.R. 137, 140 (Bankr.N.D.Ohio 1992)("The marriage of short duration produced no children which reflects little need for support provisions."); *Boudakian v. Boudakian (In re Boudakian)*, 137 B.R. 89, 92–93 (Bankr. D.R.I.1992)("Many Bankruptcy Court deci-

sions support the view that a marriage like this one, of short duration, without issue, and where the financial condition of the non-debtor spouse had not materially declined, would result in a finding of a property distribution, as opposed to alimony or support.")

Finally, in applying the *In re Dennis* factors to determine intent, it does not appear that the parties intended for the obligations to be considered in the nature of support. Although Debtor currently has more income than Plaintiff, a large percentage of that income is retirement pay. Debtor works as a security guard whereas Plaintiff works in a corporate environment with advancement opportunity. Furthermore, Debtor has three minor children which impact his probable financial needs. The parties did not present evidence as to their respective physical conditions or educational backgrounds.

▬▬ The court is aware that determining these obligations to be dischargeable will allow the creditors to pursue Plaintiff for collection of Debtor and Plaintiff's joint debts. If successful, Plaintiff's ability to provide for her own necessities may be impacted. However, the intent of the parties at the time of the decree is dispositive. *Cummings v. Cummings*, 244 F.3d 1263, 1266 (11th Cir.2001)(noting that the touchstone for dischargeability under 523(a)(5) is intent of the parties). Plaintiff's inability to pay the obligations at this point is not a factor to be considered in a § 523(a)(5) case. *See Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 907 (11th Cir.1985)(holding that no precise inquiry into spouse's financial circumstances is necessary).

### 2. 11 U.S.C. § 523(a)(15)

▬▬ Section 523(a)(15) is not applicable to this Chapter 13 case. Section 1328(a)(2) excepts § 523(a)(5) debts from discharge, but it does not except § 523(a)(15) debts from discharge. 11 U.S.C. § 1328(a)(2). *See also Williams v. Williams (In re Williams)*, Ch. 7 Case No. 98–40928, Adv. No. 98–4090, slip op. at 5 n. 1, 1998 WL 34064516 (Bankr.S.D.Ga. Sept. 30, 1998). So long as Debtor's Chapter 13 case remains pending and in the event it is successfully completed, his Chapter 13 discharge will include any unpaid balance owed on the mortgage and the pre-divorce credit card obligation. If for any reason his case is converted to Chapter 7, then a § 523(a)(15) issue will arise based on the then current ability of the parties to pay these debts.

### B. The Post-divorce, Pre-bankruptcy Visa Balance

After the divorce, Debtor incurred substantial additional charges on the Visa card that he seeks to discharge. According to his testimony, he obtained cash advances to pay obligations to Plaintiff such as her attorney's fees and moving expenses, both of which he owed pursuant to the separation agreement. In addition, Debtor made purchases at a local florist, a jewelry store, and a tanning salon.

▬▬ A bankruptcy court may, in its discretion, abstain from addressing a particular matter when concerns of comity and judicial convenience outweigh federal bankruptcy concerns. *In re Chadwick*, 296 B.R. 876, 883 (Bankr.S.D.Ga.2003). Specifically, 28 U.S.C. § 1334(c)(1), in pertinent part, provides,

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to cases under title 11.

Although § 1334(c) refers to district courts, it applies to the bankruptcy court when the district court refers a case or proceeding to the bankruptcy court. *Cash Currency Exch., Inc. v. Shine (In re Cash Currency Exch., Inc.)*, 37 B.R. 617, 620 n. 2 (N.D.Ill.1984).

The Eleventh Circuit noted that "it is appropriate for bankruptcy courts to avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters." *Carver v. Carver*, 954 F.2d 1573, 1579 (11th Cir.1992)(quoting *In re MacDonald*, 755 F.2d 715, 717 (9th Cir.1985)). Furthermore, the state court has concurrent jurisdiction with this Court to determine whether Debtor's obligations are in the nature of support for the purposes of § 523(a)(5). *Cummings v. Cummings*, 244 F.3d 1263, 1267 (11th Cir.2001).

In the interest of justice, comity and judicial convenience, this Court will abstain from determining if Debtor's post-divorce, pre-bankruptcy obligations on the Visa card are in the nature of alimony, support or maintenance. The post-divorce, pre-bankruptcy charges were prohibited by the separation agreement and unanticipated by the parties and the Camden County Superior Court; therefore, it is impossible for this Court to determine the intent of the parties or the state court at the time of the decree. Indeed, to attempt to do so would infringe on the prerogative of the state judicial system. It is for that court to determine the liability for Debtor's charges on the joint credit card made after the separation agreement was entered and their dischargeability in bankruptcy.

Further, because the state court has concurrent jurisdiction to determine dischargeability, the parties are granted relief from the automatic stay under 11 U.S.C. § 362 in order to have the issue determined by the state court. *See Carver*, 954 F.2d at 1578 (noting that "such relief should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court.").

### *ORDER*

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that (1) Debtor's obligation to pay the second mortgage on the Camden County house is dischargeable in Chapter 13 and; (2) Debtor's obligation to pay the $8,700.00 balance on the Visa card as of the date of the separation agreement is dischargeable in Chapter 13.

FURTHER ORDERED that this Court will abstain from determining if the post-divorce, pre-bankruptcy credit card charges are dischargeable due to their nature as alimony, maintenance or support.

FURTHER ORDERED that the parties are granted relief from the automatic stay in order to pursue an action in the state court to determine the dischargeability of the post-divorce, pre-bankruptcy credit card charges.