In re Bradford W. PETTY, III, Huann Thompson Petty, Debtors.

Carole L. Petty, Plaintiff,

v.

Bradford W. Petty, Defendant.

Bankruptcy No. 8:04–BK–5926–PMG.
Adversary No. 8:04–ap–388–PMG.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 21, 2005.

Daniel P. Rock, Esquire, New Port Richey, FL, for Plaintiff.

Joel S. Treuhaft, Esquire, Treuhaft Law Offices, P.A., Clearwater, FL, for Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing to consider the Complaint to Determine Certain Debts to be Non–Dischargeable filed by the Plaintiff, Carole L. Petty.

In the Complaint, the Plaintiff alleges that certain debts owed to her by the Debtor, Bradford W. Petty, are nondischargeable pursuant to § 523(a)(4), § 523(a)(6), and § 523(a)(15) of the Bankruptcy Code.

In response, the Debtor contends that all of the claims asserted by the Plaintiff are in the nature of a property settlement adjudicated in connection with a divorce. According to the Debtor, therefore, the Court should "balance the hardships" pursuant to § 523(a)(15) of the Bankruptcy Code, and determine that the debts are dischargeable.

### Background

The Plaintiff is the former wife of the Debtor. A Final Judgment dissolving their marriage was entered on August 31, 1995, by the Circuit Court for Pasco County, Florida.

In the Final Judgment of Dissolution, the Court made initial determinations that (1) the Plaintiff is entitled to 13.5 percent of the gross amount of the military pension received by the Debtor; that (2) the Plaintiff and the Debtor previously had owned a business known as the Out of Bounds Lounge; and that (3) the Debtor had sold the Lounge without consulting the Plaintiff. The amount of the proceeds owed to the Debtor from the sale of the Lounge was $80,000, represented by an unsecured promissory note.

The Final Judgment of Dissolution further provides in its Ordering paragraphs:

5. That Petitioner [the Plaintiff] is hereby awarded as partial equitable distribution of the parties' assets thirteen

and one-half (13.5%) per cent of Respondent's gross monthly military pension, which percentage shall include future increases which Respondent may receive from the United States Army, retroactive to January 1, 1993. Respondent's monthly pension as of May 1, 1995, from the United States Army is $2,053.00 of which Petitioner is presently entitled to $277.16 per month. That this Court reserves jurisdiction to enter a Qualified Domestic Relations Order or such other Order as is necessary to require the United States Army to pay to the Petitioner thirteen and one-half (13.5%) per cent of Respondent's gross monthly military pension as equitable distribution. The Respondent is hereby directed to pay directly to Petitioner thirteen and one-half (13.5%) per cent of his gross monthly pension commencing May 1, 1995, and payable on May 15, 1995, and continuing on the 15th day of each month thereafter until such time as Petitioner commences receiving her portion of said military pension directly from the United States Army.

.     .     .     .     .

7. That Respondent shall indemnify and hold the Petitioner harmless on any loans or credit cards involving the business or the Respondent's children and shall be responsible for payment of same.

8. That as and for partial equitable distribution of the parties' assets, the Court hereby awards to Respondent the promissory note in the amount of $80,000.00 from the Out of Bounds Lounge, Inc.

9. That as and for partial equitable distribution of the parties' assets, the Respondent is hereby directed to pay to Petitioner the sum of $40,000.00 together with interest at the rate of twelve (12%) per cent per annum from October,

1994, until December 31, 1994, and interest from January 1, 1995, at the legal rate of interest, in the following manner: The Respondent shall have two (2) years from date of the final hearing in this matter (May 1, 1995) to satisfy said $40,000.00 obligation, together with the accrued interest.

(Plaintiff's Exhibit 1). The Final Judgment provided for a possible extension of the two year period to satisfy the obligation to pay the Plaintiff proceeds from the sale of the Out of Bounds Lounge, and also provided that the Respondent could be relieved of the obligation if he was not able to enforce the promissory note. (Paragraph 9). Additionally in the Final Judgment, the Court denied the Plaintiff's request for alimony. (Paragraph 11).

The Plaintiff subsequently filed a Motion for Contempt and/or Enforcement of the Final Judgment dissolving the parties' marriage. The Motion related to the proceeds from the sale of the Out of Bounds Lounge. On January 31, 1997, the Circuit Court for Pasco County entered a Final Judgment in favor of the Plaintiff on her Motion. In the Final Judgment, the Court acknowledged that the Motion for Indirect Criminal Contempt had been withdrawn, since the evidence did not show a willful or intentional violation by the Debtor. The Court further found that the total sale price of the Lounge was $200,000.00, which apparently was an amount greater than originally represented to the Debtor by his business partner. In the Order, the Court further found:

3) Nevertheless, this Court does find by the greater weight of the evidence that the Husband did owe, on June 14, 1996, the following sum: $45,876.86, and that on or about June 14th, the wife received $31,883.87 from the parties joint account, leaving an outstanding balance due of $13,992.99.

The Court entered a Judgment in favor of the Plaintiff and against the Debtor for the amount of $13,992.99, plus interest and costs.

On May 19, 2003, almost eight years after the entry of the Final Judgment of Dissolution of Marriage, the Debtor filed a petition under Chapter 13 of the Bankruptcy Code. (Case No. 8:03–bk–10195–ALP). The Debtor ceased making the monthly payments to the Plaintiff from his military pension, as required by the Final Judgment of Dissolution, at the time that he filed the petition. (Transcript, pp. 28, 33, 50). The Debtor's Chapter 13 case was dismissed on December 19, 2003.

After the dismissal of the Debtor's Chapter 13 case, the Plaintiff filed a Motion for Contempt against him in the Circuit Court for Pasco County. The Motion was based on the Debtor's nonpayment of the monthly amounts awarded to the Plaintiff from the Debtor's military pension. On March 23, 2004, the Circuit Court entered its Court Findings and Interim Final Judgment on the Plaintiff's Motion for Contempt. In the Findings and Judgment, the Court found:

5. The Court finds the withholding of the pension benefit constitutes civil theft, such that the former Husband's retention and non-payment after his receipt (in trust) cannot be excused, as the Respondent has tendered no legal excuse.

6. Judgment is hereby entered against Bradford W. Petty, III for the sum of $4,691.46 for the money wrongfully withheld by the former Husband through February 2004, plus the March 2004 amount of $400.68, and treble damages in the amount of $14,074.38 through February 2004, for the civil theft penalty, total sum of $19,166.52, for which sum let execution issue.... Respondent, Bradford Petty, is directed to make future payments within 5 days of any receipt of future pension benefits as these sums were anticipated to be used by the former Wife to support herself.

(Plaintiff's Exhibit 9)(Emphasis in original).

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on March 25, 2004, two days after the entry of the Court Findings and Interim Final Judgment.

The Plaintiff filed the Complaint that is currently at issue on June 17, 2004. The Complaint contains four Counts. Counts I and II are actions for a determination that the Plaintiff's 13.5% interest in the Debtor's military pension, including the amounts awarded to the Plaintiff in the Findings and Interim Final Judgment entered on March 23, 2004, are not dischargeable pursuant to § 523(a)(4) and § 523(a)(6) of the Bankruptcy Code, respectively; Count III is an action for a determination that an indebtedness owed by the Debtor on a USAA Mastercard account is not dischargeable pursuant to § 523(a)(15) of the Bankruptcy Code; and Count IV is an action for a determination that the amount awarded to the Plaintiff in the Final Judgment for Petitioner dated January 31, 1997, is not dischargeable pursuant to § 523(a)(4) and § 523(a)(6) of the Bankruptcy Code.

### Discussion

It appears that the issues raised in the Complaint may be divided into three categories for purposes of evaluating the Plaintiff's claims: (1) the payments claimed by the Plaintiff from the Debtor's military pension (both the prospective monthly payments received by the Debtor, as well as the arrearages claimed by the Plaintiff); (2) the remaining amount claimed by the Plaintiff from the sale of the Out of Bounds Lounge; and (3) the amount owed

on the USAA Mastercard account. The Court will consider each issue separately.

## 1. The military pension

### A. The Plaintiff's sole and separate property

█ It appears well-established that in certain circumstances a divorce court's award of a portion of a debtor's military pension to a former spouse creates a vested property interest in the former spouse.

Many courts have considered the question of whether a former spouse's entitlement to a portion of a military pension was to be viewed as a "debt," and have concluded that "[d]isposable military retirement benefits are not debts as defined by 11 U.S.C. § 101(12) of the Bankruptcy Code, but rather, constitute the sole and separate property of a debtor's former spouse where the spouse received an award of a portion of debtor's military retirement benefits pursuant to a divorce decree or other order of the court."

*In re Baker*, 274 B.R. 176, 192 (Bankr.D.S.C.2000)(quoting *In re Califf*, 195 B.R. 499, 501 (Bankr.N.D.Ala.1996)). In *Baker*, the Court concluded that the former wife had obtained an ownership interest in the debtor's military retirement plan as a result of their divorce judgment, so that no debtor/creditor relationship existed between the former spouses. *In re Baker*, 274 B.R. at 201.

Similarly, in *In re Potter*, 159 B.R. 672, 673 (Bankr.N.D.N.Y.1993), a state court divorce decree had awarded the former spouse a portion of the military pension payable to the debtor. The issue was whether the award created an obligation that was dischargeable in the debtor's subsequent bankruptcy case. *In re Potter*, 159 B.R. at 675. The Court concluded:

[T]he weight of authority on this issue, on facts substantially similar to those present in the instant case, holds that a former spouse's interest in the debtor's pension becomes the sole and separate property of that spouse, not a debt, upon entry of a final judgment of divorce. *Id.* at 675. Since the former spouse's interest in the debtor's military pension constituted her sole and separate property, the Court found that the interest was not property of the debtor's bankruptcy estate and did not give rise to a "debt" within the meaning of the Bankruptcy Code. *Id.* at 676. The Court in *In re McQuade*, 232 B.R. 810 (Bankr.M.D.Fla.1999) reached the same conclusion with respect to a non-military pension.

Finally, it appears that the property interest vests in the former spouse upon the entry of the divorce judgment, and does not depend on the subsequent entry of a Qualified Domestic Relations Order. In *In re Newcomb*, 151 B.R. 287 (Bankr. M.D.Fla.1993), for example, the Court found that the former husband retained no property interest in the portion of his military pension awarded to his former wife in a divorce judgment. *In re Newcomb*, 151 B.R. at 289. Although the payments in *Newcomb* were made directly to the former wife by the Air Force, the Court indicated that the debtor would retain no property interest in the payments even if he received the payments and later forwarded them to his former wife. The Court cited *In re Chandler*, 805 F.2d 555 (5th Cir.1986) and *Bush v. Taylor*, 912 F.2d 989 (8th Cir.1990) to support its conclusion in this regard.

The *Chandler* and *Bush* cases involved, at least in part, situations where the husband received the full monthly pension payment and remitted to his ex-wife that portion to which she was entitled. In each case, the Court held the hus-

band acted as a mere constructive trustee or conduit for the payments and had no further property interest in the funds. *In re Newcomb,* 151 B.R. at 290. The holding is consistent with the rule that the former spouse's interest in a pension becomes the sole and separate property of that spouse "upon entry of a final judgment of divorce." *In re McQuade,* 232 B.R. at 813. The vesting of the property right is not dependent upon a supplemental order instructing the pension plan administrator to make the payments directly to the former spouse.

In this case, the Final Judgment of Dissolution of Marriage provides that the Plaintiff is entitled to 13.5% of the Debtor's military pension; that the Plaintiff is awarded 13.5% of the Debtor's military pension in connection with the equitable distribution of their assets; that the Court reserved jurisdiction to enter an Order requiring the United States Army to pay the Plaintiff her portion of the pension; that the Debtor is directed to pay the Plaintiff her portion of the pension until such payments are commenced by the Army; and that the Debtor shall reimburse the Plaintiff for the arrearages that had accrued since the date of their separation. (Plaintiff's Exhibit 1).

Based on the provisions in the Final Judgment, the Court is satisfied that the State Court intended to transfer a 13.5% interest in the Debtor's military pension to the Plaintiff, effective as of the date of the Judgment. This conclusion is confirmed by the State Court's subsequent determination that the Debtor's "withholding of the pension benefit constitutes civil theft." (Paragraph 5, Court Findings and Interim Final Judgment, March 23, 2004.)

Consequently, the interest became the sole and separate property of the Plaintiff as of that date. The interest does not constitute property of the estate in the Debtor's bankruptcy case, and does not constitute a "debt" owed by the Debtor to the Plaintiff. Accordingly, the interest is not subject to the dischargeability provisions set forth in § 523 of the Bankruptcy Code.

## B. The civil theft judgment

A related issue involves the Court Findings and Interim Final Judgment entered by the State Court on March 23, 2004. The Interim Final Judgment deals in part with the Plaintiff's share of the pension payments that were received by the Debtor, but not remitted to the Plaintiff, between March of 2003 and February of 2004. The Court found that the Debtor's act of withholding the payments from the Plaintiff constituted civil theft, and that his retention of the funds was not excused. Consequently, the Court entered a Judgment against the Debtor for the amount of the funds that was wrongfully withheld, plus treble damages as the civil theft penalty.

The total amount of the Judgment was $19,166.52. Of this total amount, the sum of $5,092.14 represented the Plaintiff's share of the pension payments, and the sum of $14,074.38 represented the treble damages calculated as the civil theft penalty.

The issue, therefore, is whether the treble damages portion of the Interim Final Judgment should be determined to be nondischargeable in the Debtor's bankruptcy case. The Court finds that the treble damages award in the amount of $14,074.38 is nondischargeable under § 523(a)(4) of the Bankruptcy Code.

First, the United States Supreme Court has determined that treble damages may be nondischargeable as part of the "debt" arising from a debtor's fraudulent conduct.

*Cohen v. de la Cruz,* 523 U.S. 213, 223, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). Bankruptcy Courts in Florida have also determined that treble damages are nondischargeable in those cases in which a state court has previously found that the debtor violated Florida's civil theft statute. See, for example, *In re Padgett,* 235 B.R. 660 (Bankr.M.D.Fla.1999) (The full amount of a state court judgment for civil theft, including the award of treble damages, was nondischargeable under § 523(a)(4)); and *In re Rogers,* 193 B.R. 55, 60 (Bankr. M.D.Fla.1996) ("[T]reble damages awarded by the state court upon a finding of liability under Fla.Stat. § 812.014(1) [the civil theft statute] is excepted from Defendants' discharge under 11 U.S.C. § 523(a)(6)").

■ Second, the Court finds that the Interim Final Judgment entered on March 23, 2004, is entitled to collateral estoppel effect, so that the Debtor is precluded from denying the nondischargeability of the claim. To apply collateral estoppel to a prior Florida State Court judgment, the following requirements must be satisfied: (1) the parties must be identical in both actions; (2) the issues must be identical in both actions; and (3) the matter must have been fully adjudicated in the prior action. *In re Itzler,* 247 B.R. 546, 550 (Bankr. S.D.Fla.2000). For purposes of applying the doctrine to a civil theft judgment in a subsequent dischargeability action, it appears that the first two elements are satisfied, and the only issue is whether the civil theft claim was actually litigated in the prior action. *In re Padgett,* 235 B.R. at 662–664.

In this case, the Court finds that the Plaintiff's civil theft claim was fully adjudicated by the state court. The Plaintiff filed an Amended Motion for Contempt and Other Relief on March 1, 2004. (Plaintiff's Exhibit 12). The Amended Mo-

tion was served on the Debtor at his address of record on February 27, 2004. In Count II of the Amended Motion, the Plaintiff expressly alleged (1) that the Debtor converted the Plaintiff's share of the military pension to his own use and benefit; (2) that the conversion amounts to civil theft in violation of Florida's civil theft statute; (3) that the Plaintiff served the Debtor with the required pre-action notice; and (4) that the Plaintiff is seeking the sum of $14,053.38, in addition to the underlying debt, as the civil penalty provided by the Civil Theft statute.

The Plaintiff served an Amended Notice of Hearing on the Debtor at his address of record on February 27, 2004. (Plaintiff's Exhibit 13). The hearing on the Plaintiff's Amended Motion for Contempt was scheduled for March 23, 2004.

The Amended Motion was heard by the Court, and the Court thereafter entered its Court Findings and Interim Final Judgment. (Plaintiff's Exhibit 9). The Judgment includes specific findings that (1) the Final Judgment of Dissolution of Marriage required the Debtor to pay 13.5% of his pension to the Plaintiff, immediately upon receipt; (2) that the Debtor ceased making the payments to the Plaintiff in 2003; and (3) that the Plaintiff sent a certified "civil theft demand" letter to the Plaintiff, which was "received by the Court" as evidence. The Court then expressly concluded as follows:

> 5. The Court finds the withholding of the pension benefit constitutes civil theft, such that the former Husband's retention and non-payment after his receipt (in trust) cannot be excused, as the Respondent has tendered no legal excuse.

(Plaintiff's Exhibit 9).

Under these circumstances, the Court finds that the Plaintiff's civil theft claim

against the Debtor was fully adjudicated by the state court. Since the claim was fully adjudicated, the Debtor is precluded from relitigating the civil theft cause of action, and the entire Judgment, including the award of treble damages, is entitled to collateral estoppel effect. The entire amount of the Judgment for civil theft, including the award of treble damages, is nondischargeable under § 523(a)(4) of the Bankruptcy Code. *In re Padgett,* 235 B.R. at 664.

## 2. The sale proceeds

The Final Judgment of Dissolution of Marriage directs the Debtor to pay the Plaintiff the sum of $40,000.00 "as and for partial equitable distribution of the parties' assets." The amount was intended to represent one-half of the proceeds payable to the Debtor from the sale of the Out of Bounds Lounge. The Plaintiff has collected a portion of the award, and the remaining balance due as of January 31, 1997, was $13,992.99. (Plaintiff's Exhibit 4).

### A. A property settlement

■ The Court finds that the award constitutes a property settlement, and is not in the nature of alimony, maintenance, or support.

■ The determination of whether an obligation contained in a divorce decree is alimony or support, or whether it is a property settlement, involves a fact-specific analysis based on the circumstances of the case. *In re Bristow,* 2005 WL 1321996, at *3 (Bankr.M.D.N.C.). The party seeking a determination of nondischargeability has the burden of proving that the obligation is alimony or support. *Cummings v. Cummings,* 244 F.3d 1263, 1265 (11th Cir.2001).

■ Courts generally consider a variety of factors in determining the nature of a

divorce obligation. See, for example, *In re Cirincione,* 2005 WL 1115249, at *6 (Bankr.W.D.Mo.), and *In re Coker,* 272 B.R. 762, 764–65 (Bankr.M.D.Fla.2001). The primary factor, however, is the intent of the divorce court in allocating the assets and liabilities. *Cummings v. Cummings,* 244 F.3d at 1266.

In this case, the divorce court intended to award one-half of the sale proceeds to the Plaintiff as a property settlement, and not as alimony or support. In the Final Judgment of Dissolution of Marriage, the Court found that the Plaintiff and the Debtor had no children together, and that both parties had been employed during the marriage. The Plaintiff was a licensed real estate agent employed by Bay Village Builders at the time of the divorce. (Transcript, pp. 37–38). The Plaintiff's request for alimony was specifically denied in the Final Judgment, and each party was responsible for his/her own attorney's fees and costs incurred in the divorce. It appears, therefore, that the Court determined that the Plaintiff did not have a need for support at the time that the Judgment was entered.

The Court awarded the Plaintiff one-half, or an equal percentage, of the proceeds from the sale. Although the amount of the award was $40,000.00, the Court did not direct the Debtor to pay the sum either immediately or in installments. Instead, it is significant that the award was payable in a lump sum, but that the payment was not due until at least two years from the date of the divorce trial. Further, if the Debtor was unable to enforce the note against buyer of the Lounge, the Judgment provided that the Debtor would be relieved of the obligation to pay any proceeds to the Plaintiff.

Under these circumstances, the Court finds that the award of one-half of the sale proceeds was not intended to provide for

the support or maintenance of the Plaintiff. The award clearly is in the nature of a property settlement.

**B. Sections 523(a)(4) and 523(a)(6)**

▮▮▮ Section 523(a)(4) of the Bankruptcy Code provides:

11 U.S.C. § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4). "Section 523(a)(4), as with all other discharge statutes, is construed narrowly to further the fundamental policy of the Bankruptcy Code of providing the debtor with a fresh start." *In re Delisle*, 281 B.R. 457, 466 (Bankr. D.Mass.2002). "For purposes of section 523(a)(4), the term 'fiduciary' is not to be construed expansively; rather, it refers only to 'express' or 'technical' trusts that exist before the act of defalcation." *In re Hanft*, 315 B.R. 617, 623 (S.D.Fla.2002). "The Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts." *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir.1993).

▮▮▮ The Final Judgment of dissolution of the marriage entered August 31, 1995, does not establish a trust for the proceeds payable by the Debtor to the Plaintiff from the sale of the Out of Bounds Lounge, and the Final Judgment entered January 31, 1997, makes no finding that the debt is based on the Debtor's fraud or defalcation while acting in a fiduciary capacity, and it makes no finding embezzlement or larceny of these proceeds by the Debtor.

▮▮▮ Section 523(a)(6) of the Bankruptcy Code provides:

11 U.S.C. § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6). For an injury to be excepted from discharge under § 523(a)(6), the injury itself must be willful and malicious, and not simply the result of a deliberate or intentional act. "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998).

▮▮▮ The Final Judgment entered January 31, 1997, makes no finding that the Debtor willfully and maliciously intended any injury to the Plaintiff. In fact, in the Final Judgment the Court stated that ". . . the evidence did not show a willful or intentional violation by Mr. Petty." The Final Judgment establishes the amount of the debt, but does not contain any provision that would except the debt from discharge pursuant to § 523(a)(4) or (a)(6).

No testimony or other evidence was offered that would render the debt nondischargeable under 523(a)(4) or (a)(6). The Debtor's obligation to pay the Plaintiff the remaining balance of the award based on the sale of the Out of Bounds Lounge is not excepted from discharge pursuant to § 523(a)(4) or (a)(6).

### 3. The USAA Mastercard account

■ The Final Judgment of Dissolution of Marriage provides that the Debtor shall indemnify and hold the Plaintiff harmless on any credit cards involving the Out of Bounds Lounge or the Debtor's children, and that the Debtor shall be responsible for paying those obligations.

The parties appear to agree that a debt on a USAA Mastercard account existed at the time of the divorce in the approximate amount of $5,871.00, and that the debt related to the Out of Bounds Lounge.

The current balance on the Mastercard account is approximately $10,868.38.

At trial, the Debtor testified that he had completely satisfied the debt that was owed on the account at the time of the divorce, and that the present balance represents charges incurred solely by him and his current wife after his divorce from the Plaintiff was final. The Debtor acknowledges that the entire indebtedness currently owed on the Mastercard account is his debt, and not the debt of the Plaintiff. (Transcript, pp. 50–51, 60).

The Debtor testified that he had notified Mastercard that the Plaintiff's name should not be maintained on the account. (Transcript, p. 51). Nevertheless, the Plaintiff is apparently listed as a joint cardholder and receives collection notices and phone calls from Mastercard's debt collection service. (Plaintiff's Exhibit 14; Transcript, p. 30).

The Debtor's post-divorce indebtedness does not fall squarely within the terms of the Final Judgment of Dissolution of Marriage, since it is a new debt incurred solely by the Debtor and his current wife. It was not a marital debt that was in existence at the time of the divorce, and therefore was not contemplated by the divorce court. Consequently, the indebtedness does not fall within the exceptions to dis-

chargeability set forth in §§ 523(a)(5) and 523(a)(15) of the Bankruptcy Code.

The Court cannot determine that the current Mastercard debt is nondischargeable under § 523(a). Nevertheless, the Court will modify the stay to allow the Plaintiff to pursue her remedies against the Debtor in state court, either through the divorce proceeding or any separate action that is appropriate, and seek a determination of her rights with respect to the Mastercard account. See *In re Fussell,* 303 B.R. 539, 547 (Bankr.S.D.Ga. 2003)(The Court abstained from determining whether the debtor's post-divorce, pre-bankruptcy credit card obligations were in the nature of alimony, maintenance, or support, and modified the automatic stay to permit the issue to be determined by the state court.).

### Conclusion

The matter before the Court is the Plaintiff's Complaint for a determination that certain debts owed to her by the Debtor, her former husband, are nondischargeable under § 523(a)(4), § 523(a)(6), and § 523(a)(15) of the Bankruptcy Code.

The Court finds that the 13.5% interest in the Debtor's military pension that was awarded to the Plaintiff in the Final Judgment of Dissolution of Marriage is the sole and separate property of the Plaintiff. Consequently, the interest is not property of the Debtor's bankruptcy estate, and not subject to the dischargeability provision of § 523(a) of the Bankruptcy Code.

With respect to the obligation evidenced by the Interim Final Judgment entered by the state court on March 23, 2004, the Court finds that the entire amount of the Judgment for civil theft, including the treble damages portion of the award, is nondischargeable under § 523(a)(4) of the Bankruptcy Code.

The Court finds that the award to the Plaintiff of one-half of the proceeds from the sale of the Out of Bounds Lounge constitutes a property settlement in connection with their divorce, and is not in the nature of alimony, maintenance, or support. Additionally, the debt was not for fraud or defalcation while the Debtor was acting in a fiduciary capacity, embezzlement, or larceny, and was not a debt for a willful and malicious injury to the Plaintiff. The debt is not excepted from discharge under § 523(a)(4) or § 523(a)(6).

Finally, the Court finds that the current balance owed on the USAA Mastercard account is a post-divorce obligation incurred solely by the Debtor and his present wife, which does not fall within the exceptions to dischargeability set forth in § 523(a)(5) or § 523(a)(15). The automatic stay under § 362 of the Bankruptcy Code should be modified, however, to permit the Plaintiff to pursue her state court remedies against the Debtor with respect to the account.

Accordingly:

**IT IS ORDERED** that:

1. Final Judgment should be entered in favor of the Plaintiff, Carole Petty, and against the Debtor, Bradford W. Petty, on the Complaint to Determine Certain Debts to be Non-Dischargeable, in accordance with the terms of this Order.

2. The 13.5% interest in the Debtor's military pension that was awarded to the Plaintiff in the Final Judgment of Dissolution of Marriage is the sole and separate property of the Plaintiff, and is therefore not property of the Debtor's bankruptcy estate and not subject to the dischargeability provisions of § 523(a) of the Bankruptcy Code.

3. The entire amount of the obligation evidenced by the Interim Final Judgment for civil theft entered by the Circuit Court for Pasco County on March 23, 2004, including the treble damages portion of the award, is nondischargeable under § 523(a)(4) of the Bankruptcy Code.

4. The award to the Plaintiff of one-half of the proceeds from the sale of the Out of Bounds Lounge is not excepted from discharge under § 523(a)(4) or § 523(a)(6) of the Bankruptcy Code.

5. The current balance owed by the Debtor on the USAA Mastercard account does not fall within the exceptions to dischargeability set forth in § 523(a)(5) or § 523(a)(15) of the Bankruptcy Code. The automatic stay imposed by § 362 of the Bankruptcy Code is modified, however, to permit the Plaintiff to pursue her state court remedies against the Debtor with respect to the account.